ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COLLINS L. GLENN,

        Plaintiff,

v.

STATE FARM FIRE AND
CASUALTY COMPANY,

        Defendant.

Case No. 03-60066
Hon. Marianne O. Battani

FILED
DEC 15 4 22 PM '03
U.S. DISTRICT COURT
ANN ARBOR

---

STUART A. SKLAR P38146
DOUGLAS G. McCRAY (P55568)
FABIAN, SKLAR & KING, P.C.
Attorney for Plaintiff
31800 Northwestern Hwy, Suite 205
Farmington Hills, MI 48334
(248) 855-2110

ROBERT L. MOTT, JR. (P27942)
PATRICK, JOHNSON & MOTT, P.C.
Attorneys for Defendant
27777 Franklin Road, Suite 1100
Southfield, MI 48034
(248) 356-8590

---

### MOTION TO EXCLUDE THE TESTIMONY OF DANIEL TERSKI PURSUANT TO FED. R. EVID. 702

NOW COMES Plaintiff Collins Glenn, by and through his Attorneys Fabian,

Sklar & King, P.C., and for his Motion to exclude the testimony of Daniel Terski

pursuant to Fed. R. Evid. 702 states:

1.      This action arises out of Defendant State Farm Fire and Casualty

Company's ("State Farm's") refusal to pay insurance proceeds in connection with a fire

at Plaintiff's residence pursuant to a homeowner's insurance policy issued to Plaintiff by

State Farm.

2.      In denying Plaintiff's claim for benefits under his homeowner's policy,

Defendant has asserted that he committed arson, and is therefore barred from collecting

benefits pursuant to the policy language.



3.     In claiming Mr. Glenn committed arson, Defendant relies upon the opinion of its retained fire investigation "expert", Daniel Terski.

4.     However, under the standard set by NFPA 1033 (which Mr .Terski acknowledges is authoritative), he fails.to meet the minimum job requirements of a fire investigator, and therefore is barred from rendering expert testimony as to the fire's origin and cause pursuant to Fed. R. Evid. 702.

5.     Furthermore, Mr. Terski's deposition reveals that the "investigation" he conducted and resulting opinion as to the fire's cause were fatally flawed, and failed to comply with requirements set by NFPA 921, which Mr. Terski acknowledges is reliable, and which he claims to employ in conducting his investigations.

6.     There has been a conference between the attorneys in this action, in which the movant explained the nature of the motion and its legal basis, and requested but did not obtain concurrence in the relief sought.

WHEREFORE, for these reasons, and for those set forth in the attached brief, Plaintiff respectfully requests an order barring Mr. Terski from testifying at the time of trial.

Respectfully submitted,

FABIAN, SKLAR & KING, P.C.

STUART A. SKLAR (P38146)
DOUGLAS G. McCRAY (P55568)
31800 Northwestern Hwy., #205
Farmington Hills, MI 48334
(248) 855-2110

Dated:  December 15, 2003

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COLLINS L. GLENN,

        Plaintiff,

v.

STATE FARM FIRE AND
CASUALTY COMPANY,

        Defendant.

Case No. 03-60066
Hon. Marianne O. Battani

---

STUART A. SKLAR P38146
DOUGLAS G. McCRAY (P55568)
FABIAN, SKLAR & KING, P.C.
Attorney for Plaintiff
31800 Northwestern Hwy, Suite 205
Farmington Hills, MI 48334
(248) 855-2110

ROBERT L. MOTT, JR. (P27942)
PATRICK, JOHNSON & MOTT, P.C.
Attorneys for Defendant
27777 Franklin Road, Suite 1100
Southfield, MI 48034
(248) 356-8590

---

### BRIEF IN SUPPORT OF PLAINTIFF
### COLLINS GLENN'S MOTION TO EXCLUDE
### TESTIMONY OF DANIEL TERSKI
### PURSUANT TO FRE 702

STUART A. SKLAR (P38146)
Attorney for Defendant
Fabian, Sklar & King, P.C.
31800 Northwestern Hwy., Ste. 205
Farmington Hills, MI 48334
(248) 855-2110

**A.**     **Concise Statement of Issues Presented**

1.    Should Defendant Be Precluded From Presenting the Testimony of
Its Purported Fire Investigation Expert Daniel Terski Regarding
The Origin and Cause of the Subject Fire Where:

    a.    He lacks the minimum qualifications of a fire investigator as set
forth by NFPA 1033 "Standard For Professional Qualifications
For Fire Investigator", a standard acknowledged by Mr. Terski to
be authoritative;

    b.    His fire origin and cause investigation and conclusions derived
therefrom are flawed, in that such investigation and conclusions
fail to meet the requirements of NFPA 921 "Guide For Fire and
Explosion Investigations", a standard for fire investigation
acknowledged by Mr. Terski to be authoritative, and his
investigation and conclusions derived therefrom are therefore
unreliable;

    c.    Mr. Terski admits spoliating critical evidence, whereby his own
admission the evidence will be unavailable at the time of trial?

## CONTROLLING OR MOST APPROPRIATE
## AUTHORITY FOR RELIEF SOUGHT

**Mr. Terski's qualifications as Expert Witness**

Fed. R. Evid. 702

NFPA 1033 Standard for Professional Qualifications for Fire Investigator, 2003 Edition

**Mr. Terski's Investigation**

Kumho Tire Co. Ltd. V. Carmichael, 526 US 137, 119 S.Ct. 1167, 143 L.Ed. 2d 238 . (1999)

Daubert v Merrell Dow Pharmaceuticals, Inc, 509 US 579, 113 SCt. 2786, 125 L.Ed. 2d 469 (1993)

Michigan Millers Mutual Ins Corp v Benfield, 140 F 3rd 1915 (11th Cir, 1998)

Travelers Property & Casualty Corp. v General Electric Co., 150 F Supp 2d 360 (D. Conn., F Supp 2d 423 (SD NY, 2002)

Fed. R. Evid. 702

NFPA 921 Guide for Fire and Explosion Investigations, 2001 Edition

## OVERVIEW

This litigation arises out of Defendant State Farm's refusal to pay benefits under a homeowners policy in connection with the fire that occurred at Plaintiff's residence located at 120 Burlingame, Detroit, Michigan, on December 31, 2001.  There is no dispute between the parties that the subject State Farm policy was in full force and effect at the time of the fire, and that the fire resulted in extensive damage to Mr. Glenn's home and contents, and further resulted in additional living expenses.

State Farm retained the services of Mr. Daniel Terski, an independent fire investigator who only works for insurance companies, and derives some 30% of his income from State Farm retentions.  Exhibit 1, Terski TR, 5-8.  Based upon Mr. Terski's opinions following his investigation, State Farm denied Mr. Glenn's claims under the policy, asserting arson as a defense.  Exhibit 2, State Farm denial letter.

This Motion requests this Court determine as a preliminary question (see FRE 104(a)) in the proper exercise of its gate-keeping function that Mr. Terski's proposed testimony is inadmissible because:

        a.      He lacks the minimum knowledge required of a fire investigator per NFPA 1033 and NFPA 921;

        b.      Despite paying lip service to the methodologies required for proper fire investigation by NFPA 921, he admittedly did not adhere to such methodologies; and

        c.      He has failed to preserve critical evidence relating to the origin and cause of the fire.

4

## FACTS

**A.   NFPA 1033 Standard For Professional Qualifications
For Fire Investigator**

In the field of fire investigating, whether a person is qualified as an expert is determined by consideration of NFPA 1033 Standard For Professional Qualifications For Fire Investigator ("NFPA 1033"). Exhibit 3, NFPA 1033. The standard was developed by the National Fire Protection Association Technical Committee on Fire Investigator Qualifications, for the express purpose of developing "...clear and concise job performance requirements that can be used to determine that an individual, when measured to the standard, possesses the skills and knowledge to perform as a fire investigator." Exhibit 3 at 1033-1. The purpose of NFPA 1033 is ". . .to specify the minimum job performance requirements for service as a fire investigator in both the private and public sectors." Exhibit 3, §1.2.

NFPA 1033 requires that a person purporting to be qualified as a fire investigator be familiar with the science of fire investigation. Specific areas of "requisite knowledge" include:

1. Fire behavior and spread (§4.2.2, 4.2.3, 4.2.5);

2. Fire development and interrelation of heat release rate, form and ignitability of materials (§4.2.4);

3. Basic fire chemistry and physics (§4.2.5); and

4. Effects of fire suppression (§4.2.2, 4.2.3, 4.2.4, 4.2.5).

In addition, a fire investigator "shall" remain current with investigation methodologies. Exhibit 3, §1.3.7.

5

In addition to the basic knowledge required in the above-listed sections, NFPA 1033 includes as "requisite knowledge" and understanding of processes and procedures that are critical to the determination of the origin and cause of fires, including:

1.  An understanding of burn patterns, also called fire patterns (§4.2.3, 4.2.4, 4.2.5);

2.  An understanding of ignition processes, characteristics of ignition sources, and ease of ignition of fuel (§4.2.6);

3.  The ability to inspect and evaluate the scene so as to determine the area or point of origin, source of ignition, material(s) ignited, and act or activity that brought source and materials together (§4.2).

Mr. Terski testified upon deposition that his company follows the NFPA 1033 standard; that NFPA 1033 is a good, very reliable document; that NFPA 1033 is authoritative; and that NFPA 1033 is recognized as authoritative in the fire investigation community. Terski TR, 9, 25.

## B.   NFPA 921

NFPA 921 Guide For Fire and Explosion Investigations ("NFPA 921") is a consensus document setting forth, at length, the principles and methodologies relating to fire investigation. Exhibit 4, NFPA 921 (2001 Ed.) NFPA 921 is adopted as an American National Standard. The document is drafted by the NFPA 921 Technical Committee, the members of which are appointed by the NFPA Standards Council, and is comprised of representatives of the fire service, law enforcement agencies, the insurance industry, private fire investigators, and representatives of the United States Fire Administration and the United States Bureau of Alcohol, Tobacco and Firearms. Exhibit 4, pgs. 921-1, 2.

NFPA 921 sets forth the methods, scientific principles and research related to fire investigation. Exhibit 4, p. 921-1. NFPA 921 describes numerous data collection techniques, all of which are geared toward determining the origin and cause of a fire. Some specific techniques discussed include proper analysis of fire patterns (Exhibit 4, Ch. 4); depth of char measurements (Exhibit 4, §4.5); depth of calcinations analysis (Exhibit 4, §4.12.3); analysis of collapsed furniture springs (Exhibit 4, §4.14); witness interviews (Exhibit 4, §11.4); and taking samples for analysis, including collection of control samples (Exhibit 4, §14.5).

NFPA 921 requires that a compilation of factual data, as well as analysis of those facts be accomplished objectively and truthfully, and requires the use of a systematic approach. Exhibit 4, §2.1. The systematic approach adopted is that of the scientific method, which among other things requires the collection of data by observation, experiment or other direct data-gathering means, which is based on observation or experience and is capable of being verified; analysis of the collected data, without including any subjective or speculative information; development of a hypothesis or group of hypotheses to explain the origin and cause of the fire, which hypothesis should be based solely on the empirical data collected; and testing of the hypothesis by the principle of deductive reasoning. Exhibit 4, §2.2-2.3.6.

NFPA 921 defines the term "cause" of a fire as "the circumstances, conditions or agencies that bring together a fuel, an ignition source, and oxidizers such as air or oxygen resulting in a fire or a combustion explosion." Exhibit 4, §1.3.19. Under NFPA 921, causes of fires must be classified into one of four categories: Accidental, natural, incendiary, and/or undetermined. Exhibit 4, §16.2 The "undetermined" category is to

7

be employed when the cause of a fire "cannot be proven." Exhibit 4, §16.2.4.  §16.1 of

NFPA 921 states:

> "The determination of the cause of a fire requires the identification of those circumstances and factors that were necessary for the fire to have occurred. The circumstances and factors include, but are not limited to: (1) The device or equipment involved in the ignition; (2) the presence of a competent ignition source; (3) the type and form of the material first ignited; and (4) the circumstances or human actions that allowed the factors to come together to allow the fire to occur." (Emphasis and numbering added.)

Mr. Terski testified upon deposition that his company follows the accepted practices set forth in NFPA 921, and that he considers NFPA 921 to be a reliable document, which investigation methodology he purported to follow in connection with this litigation. Terski TR, p. 9.

## C.      Relationship between NFPA 921 and NFPA 1033

All of the concepts and methodologies that are included in the areas of "requisite knowledge" in order to qualify as a fire investigator under NFPA 1033 are defined and discussed in NFPA 921.  See Exhibits 3, 4.  The basic principles of fire science, including such concepts as "heat transfer", "ignition", "plumes" and "plume generated pattern" (including "V", "U", "hourglass", "circular", and "doughnut" patterns, "flashover", "char" and "calcination" are discussed in detail in NFPA 921 Chapters 3 and 4, and otherwise throughout the document.  Many of the terms typically used in the discipline, including "thermal inertia", "entrainment", "char", "spoliation", "suppression", "plume", "flammable" and "combustible" liquids are defined in §1.3 of NFPA 921.  See Exhibit 4.

8

**D.    Mr. Terski's Qualifications As A Fire Investigator
As Measured By NFPA 1033**

As noted above, NFPA 1033 sets forth the minimum standards as to requisite

knowledge in order for one to practice as a fire investigator, a concept acknowledged

and accepted by Mr. Terski.  At his deposition, however, Mr. Terski demonstrated that

his knowledge and therefore his ability to function as a fire investigator does not rise to

the level required by NFPA 1033, even with respect to the most basic fire investigation

concepts.

Section 4.1.3 of NFPA 1033 dictates that ". .. the fire investigator shall employ

all elements of the scientific method as the operating analytical process throughout the

investigation and for the drawing of conclusions...".  The six steps of the scientific

method are set forth in Chapter 2 of NFPA 921.  Mr. Terski was unable to articulate the

six steps of the scientific method, stating:

> "I'd have to refer to the book.  I know there is 'form a hypothesis'
> and things like that."  Terski TR, p. 30.

NFPA 1033 §4.2.3, 4.2.4 and 4.2.5 declare that an understanding of burn patterns

(also called "fire patterns") is "requisite knowledge" for fire investigators.  NFPA 921

devotes an entire chapter (Chapter 4) to educating the fire investigator regarding this

topic.  "The analysis of fire patterns is performed in an attempt to trace fire spread,

identify areas and points of origin, and identify the fuels involved."  NFPA 921. § 4.1

The two basic types of patterns (movement and intensity patterns), as well as the various

pattern's geometry, are described, their origins and meanings are discussed, and their

importance with respect to determining the origin and cause of fire is explained.  The

recognition, identification and proper analysis of fire patterns by an investigator depends

upon an understanding of the dynamics of fire development and heat and flame spread. The pattern seen by the investigator can represent much of the history of the fire. NFPA 921 § 4.2, 4.4.1, 4.4.2, Exhibit 4, Chapter 4. Mr. Terski could not name either of the two basic types of fire patterns listed in NFPA 921 §4.4, and had no idea what was meant by an hourglass burn pattern, a truncated burn pattern or a circular shaped pattern.

Similarly, aside from not knowing the analytical methodology required to investigate fires and the basics of fire pattern analysis, Mr. Terski also did not understand the basic principles pertaining to heat energy transfer and thermal conductivity. Terski TR, pgs. 35-36 ("That's beyond me.") He did not know what was meant by "thermal inertia" (a concept relating to heat transfer, NFPA 921 §1.121 and §3.2.1.) Terski TR, p. 36. He did not know what was meant by "mass." Terski TR, pgs. 36-37. He did not know what was meant by "surface to mass ratio" (a concept relating to the amount of energy needed to ignite a solid material (NFPA 921 §3.3.1.) Terski TR, p. 37. He did not know what was meant by "the triangular phase of the development of a fire plume." Terski TR, p. 39.

Mr. Terski guessed at the meaning of "flashpoint". "The flashpoint of a liquid is the lowest temperature at which it gives off sufficient vapor to support a momentary flame across its surface based on an appropriate ASTM test method". NPFA 921 §3.3.2.) Terski TR, p. 38. He does not know the three stages of development of a fire plume (Terski TR, p. 38), does not know what is meant by "columnar phase of development of a fire plume" or "connical phase of development of a fire plume" (Terski TR, p. 39). Mr. Terski had no knowledge as to the conditions which preclude a fire plume from reaching maturity (Terski TR, p. 39) or as to the relationship between

the height of a fire plume and the rate of heat release of a fire plume (Terski TR, p. 40) (The height of flames above the surface of burning fuels is directly related to the heat release rate of the fire. For a given fuel, the heat release rate is related to the amount of surface burning. NFPA 921 §3.5.5.). Mr. Terski was unfamiliar with the terms "air entrainment" ("heat from a fire in the open rises as a column of ho gases called a plume. The resulting air flow draws cool air into the base of the fire, from all directions. Cool air is also drawn into the plume above ground level by the moving mass of hot air. This inflow of cool air into the plume is called entrainment, and results in decreased temperatures with increasing height in the plume" NFPA 921 §3.5.1.) or "ceiling jet" (Terski TR, p. 40). He is unfamiliar at what temperature a flashover occurs (1100°F, NFPA 921 §3.5.3.2). Terski TR, p. 40. The four means by which fire patterns are generated, a basic concept, was a "new one" to Mr. Terski (Terski TR, p. 42). (Plume generated patterns (NFPA 921 § 4.2.1); ventilation generated patterns (§4.2.2.); (Hot gas layer generated patterns (§4.2.3); full room involvement generated patterns (§4.2.4.)) See Exhibit 4, §4.2.1-4.2.4.

As noted above, NFPA 1033 §1.3.7 mandates that the fire investigator shall remain current with investigation methodology, with NFPA 921 setting forth the methodologies to be followed. Among other things, NFPA 921 notes:

> "1.     That in collecting samples for detection of liquid accelerants, controls ("comparison samples") should also be collected. (§14.5.3.4);
>
> 2.     That "[p]ost-fire interviews of witnesses and the taking of witness statements are an important part of the investigation process (§9.3.3);

3.      That, depending upon the circumstances, analysis of "depth of calcinations" is an important analytical tool (§4.1.2; 4.12.1-4);

4.      In performing a fire investigation, ·it is necessary to preserve evidence not only as to an investigator's opinions, but also as to evidence of reasonable, alternate hypothesis that were considered and ruled out. (§9.3.6.3).

Mr. Terski testified that he failed to use controls for debris samples he collected, asserting that such technique was "just my own method". Terski TR, p. 64. He then incorrectly asserted that NFPA 921 required the taking of a control sample only as long as it was known that the control sample was not contaminated (see Exhibit 4, §14.5.3.4 for the correct rule regarding taking control samples.)

Mr. Terski declined to conduct interviews of the Plaintiff's neighbors or fire department representatives despite the fact that he acknowledged that it would have been useful to do so, because he was not specifically instructed to do so by Defendant. Terski TR, pgs. 67-69, 75-78; see also Exhibit 4, §9.3.3, 11.3.

Mr. Terski had no idea what was meant by "calcination", or what that term had to do with fire investigation. Terski TR, p. 42. A reasonable inference from such testimony is that Mr. Terski failed to perform an analysis of "depth of calcination".

Mr. Terski admitted that he failed to preserve evidence, including that evidence pertaining to alternate fire causation hypotheses he supposedly ruled out. Terski TR, pgs. 17-18, 61, 72. He thought there "maybe" was something in NFPA 921 requiring notification to interested parties that a scene will be altered. Terski TR, p. 17. NFPA 921 requires that the parties be notified before altering a fire scene. Exhibit 4, §9.3.6.7.

Mr. Terski's investigative methodologies, and the conclusions derived therefrom, violated NFPA 921 in other respects as well. Although required to complete data

collection before forming any hypothesis, Mr. Terski formed his opinion that the fire resulted from the distribution of a flammable liquid and its ignition (Terski TR, p. 20) the day he visited the subject building, several days before he received the results of analysis of the samples he took. Terski TR, pgs. 18, 23-24. The sample analysis thus played no part in his opinion, despite the fact that NFPA 921 § 2.3.7 requires that no specific hypothesis be formed or treated until the data has been collected, and that the investigator should form no presumptions until all data is in hand. Instead, Mr. Terski's conclusions came from his "analysis" of burn patterns. Terski TR pgs. 23, 47. He did not perform certain tests, such as heat and flame vector analysis, because of the "very obvious burn pattern across the floor". Terski TR, p. 47. However, NFPA 921 specifically warns against such reliance on burn patterns in § 4.17.7.2, which states:

> "Irregular, curved or "pool-shaped" patterns on floors and floor coverings should not be identified as resulting from ignitable liquids on the basis of observation of the shape alone."

Mr. Terski further testified that he eliminated the possibility of an electrical cause of the fire (Terski TR, p. 61), which allowed him to conclude that the fire had been intentionally set. NFPA 921 § 16.2.5, however, states:

> "[T]he "elimination of all accidental causes" to reach a conclusion that a fire was incendiary is a finding that can rarely be justified scientifically, using only physical data..."

Further, those items and devices that he considered and eliminated as potential accidental causes for the fire were neither collected nor preserved (Terski TR, pgs. 61, 72), a clear violation of NFPA 921 §9.3.6.3 which requires preservation of evidence of reasonable alternate hypothesis that were considered and ruled out. Mr. Terski testified

13

that he would be <u>unable</u> to physically produce those items at the time of trial.  Terski

TR, p. 61.

<u>Discussion</u>

**A.    <u>FRE 702 and Daubert</u>**

Federal Rule of Evidence 702 provides that:

> "If scientific, technical or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training or education may testified thereto in the form
> of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of this case."

Under the standards set forth in <u>Daubert</u> v <u>Merrill Dow Pharmaceuticals</u>, 509 US

579; 113 S. Ct., 2786; 125 L. Ed. $2^d$ 469 (1993) and its progeny, a federal trial court has

the responsibility of acting as a gate-keeper to exclude unreliable expert testimony.

Among other things, the admissibility of expert testimony "entails a preliminary

assessment of whether the reasoning of methodology underlying the testimony is

scientifically valid, and whether that reasoning or methodology properly can be applied

to the facts in issue." <u>Daubert</u>, 509 US at 592-93.  The same reasoning applies not only

to testimony based on "scientific" knowledge, but also to testimony based on "technical"

and "other specialized" knowledge.  <u>Kumho Tire Co. Ltd.</u> v <u>Carmichael</u>, 526 US 137;

119 S. Ct. 1167; 143 L. Ed. $2^d$ 238 (1999).  Rule 702-<u>Daubert</u>-type analysis applies to

the field of fire investigation.  <u>Michigan Millers Mutual Ins. Co.</u> v <u>Benfield</u>, 140 F3rd

1914 (CA 11, 1998)(insurance company fire investigator's testimony precluded due to

unreliability).

14

Here, there is no issue regarding what standards should be applied to make the determination whether Mr. Terski holds the minimum qualifications to act as a fire investigation expert generally, and/or whether his methodologies and conclusions are sufficiently reliable to permit him to testify in this case. Mr. Terski agreed that NFPA 1033 sets forth the appropriate standard by which a person is to be judged as having or not having the minimum qualifications to act as a fire investigator, and further agreed that NFPA 921 sets the standard for assessing the reliability of fire investigative methodologies. Other courts have noted that NFPA 921 is the peer-reviewed, reliable standard for assessing fire investigation methodologies. See Travelers Property & Casualty Corp. v General Electric Co., 150 F Supp $2^d$ 360 (D. Conn., 2001); 208 F Supp $2^d$ 423 (SD NY, 2002).

Plaintiff submits that a review of the facts listed above demonstrates that Mr. Terski does not hold the "requisite knowledge" required to be a fire investigator. Although purporting to base his opinion upon burn patterns, he could not name either of the two basic fire patterns listed at NFPA 921 4.4, and had no idea what was meant by an hourglass burn pattern, a truncated burn pattern, or a circular shape pattern. His testimony revealed an appalling lack of knowledge regarding fire behavior and spread, fire development and the interrelation of heat release rate, form and ignitability of materials, as well as basic fire chemistry and physics. He does not know how to properly collect samples for chemical analysis, does not know how to preserve evidence of alternate hypothesis, nor conduct depth of char or calcination analysis.

Most tellingly, Mr. Terski was unable to explain the six-step scientific method which is the methodology to be employed in performing fire investigations, required by

15

both NFPA 1033 and NFPA 921. Plaintiff submits that Mr. Terski does not fulfill the minimum standard of NFPA 1033 of having "requisite knowledge" by knowing that the standard is set forth in some book somewhere. Quite simply; Mr. Terski does not have the requisite knowledge to be qualified by this Court as an expert fire investigator.

Further, despite Mr. Terski having paid lip service to the dictates of NFPA 921, it is again clear from the recitation of the facts that Mr. Terski did not comply with the required methodology set forth in NFPA 921, and that any testimony derived from his so-called investigation would not be "the product of reliable principles and methods" as is required by Rule 702 and Daubert. Aside from the necessity of having the requisite knowledge in order to apply principles reliably, Mr. Terski has shown himself incapable of applying the scientific method to fire investigation; he doesn't even know what the scientific method entails. Then, he makes up his own methods for sample collection, forms an hypothesis before he has collected all the data, doesn't know what the recommended data collection methods include (i.e., calcination), ignores other data collection methods (i.e., depth of char, vector analysis), ignores potentially critical witnesses (i.e., fire suppression personnel), and forms his conclusions based upon burn patterns alone, when he doesn't understand burn patterns. Since Mr. Terski does not know what the proper methodologies are, it was impossible for him to follow proper methodology, and any conclusions are inherently tainted.

In light of the foregoing, it goes without saying that it would be absolutely impossible for this Court to decide that Mr. Terski ". . . has applied the principles and methods reliably to the case." FRE 702.

## III. CONCLUSION

Mr. Terski's deposition testimony illustrates that he is not competent to render testimony as an expert fire investigator. Furthermore, his investigation was fatally flawed. Lastly, he admits that he has spoliated evidence, and acknowledges (on p. 61 of his deposition) the harm that will result to Plaintiff from his spoliation if he is allowed to testify. For these reasons, and for those set forth above, Plaintiff respectfully requests an order Daniel Terski from testifying at the time of trial.

In the event that this Court is unwilling to bar Defendant from introducing Mr. Terski's testimony, Plaintiff respectfully requests that Defendant/Mr. Terski be restricted from testifying and/or introducing evidence of the following:

1. Samples submitted by Mr. Terski; and

2. Evidence and testimony regarding Mr. Terski's elimination of accidental causes.

Respectfully submitted,

FABIAN, SKLAR & KING, P.C.

STUART A. SKLAR (P38146)
DOUGLAS G. McCRAY (P55568)
31800 Northwestern Hwy., #205
Farmington Hills, MI 48334
(248) 855-2110

Dated: December 15, 2003

Q:\3400 Series\3439\PLDG\BRIEF\MTN.TERSKI.PAK.doc

17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COLLINS L. GLENN,

       Plaintiff,

v.

                                   Case No. 03-60066
                                   Hon. Marianne O. Battani

STATE FARM FIRE AND
CASUALTY COMPANY,

       Defendant.

| | |
|---|---|
| STUART A. SKLAR P38146 | ROBERT L. MOTT, JR. (P27942) |
| DOUGLAS G. McCRAY (P55568) | PATRICK, JOHNSON & MOTT, P.C. |
| FABIAN, SKLAR & KING, P.C. | Attorneys for Defendant |
| Attorney for Plaintiff | 27777 Franklin Road, Suite 1100 |
| 31800 Northwestern Hwy, Suite 205 | Southfield, MI 48034 |
| Farmington Hills, MI 48334 | (248) 356-8590 |
| (248) 855-2110 | |

## NOTICE OF HEARING

TO:   Robert Mott, Esq.

     PLEASE TAKE NOTICE that the attached Plaintiff's Motion to Exclude Testimony of Daniel Terski Pursuant to FRE 702 will be brought on for hearing before the Honorable Marianne Battani on a date and time to be set by the Court.

                                FABIAN, SKLAR & KING, P.C.

                                STUART A. SKLAR (P38146)
                                Attorney for Plaintiff
                                31800 Northwestern Hwy., Ste. 205
                                Farmington Hills, Michigan 48334
                                (248) 855-2110

Dated: December 15, 2003

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED