46

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COLLINS L. GLENN,

       Plaintiff,

v                                        Case No. 03-60066
                                        Hon. Marianne O. Battani

STATE FARM FIRE AND
CASUALTY COMPANY,

       Defendant.

| | |
|---|---|
| STUART A. SKLAR P38146 | ROBERT L. MOTT, JR. (P27942) |
| FABIAN, SKLAR & KING, P.C. | PATRICK, JOHNSON & MOTT, P.C. |
| Attorney for Plaintiff | Attorneys for Defendant |
| 31800 Northwestern Highway | 27777 Franklin Road, Suite 1100 |
| Suite 205 | Southfield, MI 48034 |
| Farmington Hills, MI 48334 | (248) 356-8590 |
| (248) 855-2110 | |

## SUPPLEMENTAL EXHIBIT TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

Plaintiff hereby incorporates "Defendant's Objections and Answers to Plaintiff's

First Interrogatories" attached hereto as a supplemental exhibit to Plaintiff's Motion for

Partial Summary Judgment Pursuant to Fed. R. Civ. P. 56.   The motion is scheduled for

oral argument on Tuesday, September 14, 2004 at 3:30 p.m.

                          Respectfully submitted,

                          FABIAN, SKLAR & KING, P.C.

                          STUART A. SKLAR (P38146)
                          Attorney for Plaintiff
                          31800 Northwestern Hwy., #205
                          Farmington Hills, MI 48334

Dated:  September 9, 2004        (248) 855-2110

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all
parties to the above cause by depositing a copy thereof in envelopes
addressed to each of the attorneys of record herein at their respective
addresses disclosed on the pleadings, on September 9th, 2004, via:

  [ ] U.S. Mail    [ ] FAX
  [ ] Hand Delivered   [ ] UPS
  [ ] Federal Express  [X] personally handed to Mr. Mott

Roseanne M. Hood

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


COLLINS L. GLENN,

      Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

      Defendant.

_____/

CASE NO. 03-60066
HON.  MARIANNE O. BATTANI

STUART A. SKLAR (P38146)
FABIAN, SKLAR & DAVIS, P.C.
Attorneys for Plaintiff
31800 Northwestern Highway, Suite 205
Farmington Hills, Michigan 48334
(248) 855-2110

ROBERT L. MOTT, JR. (P27942)
PATRICK, JOHNSON & MOTT, P.C.
Attorneys for Defendant
27777 Franklin Road, Suite 1100
Southfield, Michigan 48034
(248) 356-8590

_____/

## DEFENDANT'S OBJECTIONS AND ANSWERS TO PLAINTIFF'S FIRST INTERROGATORIES

The Defendant, State Farm Fire and Casualty Company, through its attorneys, Patrick,

Johnson & Mott, P.C., submits the following objections and answers to the Plaintiff's First

Interrogatories:

SUPPLEMENTAL EXHIBIT TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
PURSUANT TO FED. R. CIV. P. 56



## INTERROGATORIES

1.      Identify the person or persons answering these Interrogatories and the person's relationship or position with the Defendant.

**ANSWER:**

>    Suzanne Kaigler, Team Manager, State Farm Fire and Casualty Company.

2.      Identify each person who provided information, or who assisted in any way in furnishing all or part of the answers to these interrogatories.  If such persons provided information or assisted with regard to less than all of the answers to these Interrogatories, identify the particular answers for which each such person provided information or assistance.

**OBJECTION:**

>    We object to this interrogatory to the extent that providing the requested information
>    would violate the attorney/client privilege and work product doctrines.  Furthermore,
>    the requested information has no relevance to the facts of this case nor is it
>    reasonably calculated to lead to the discovery of admissible evidence.

**ANSWER:**

>    Without in any way waiving these objections, information was provided by Suzanne
>    Kaigler, Team Manager, State Farm Fire and Casualty Company; with the assistance
>    of counsel.

3.      Identify each person whom the Defendant and/or its agents, representatives, servants, and/or employees contacted, interviewed or in any way discussed the incident which is the basis of this litigation, providing:

2

a.      The date or dates of contact with each person;

b.      Whether the contact resulted in an oral or written statement, and describe in detail the subject matter of the contact and a summary of the conversation resulting from each person contacted.

**ANSWER:**

In addition to our attorneys, investigators, and experts we retained, the following individuals and/or entities were contacted and/or interviewed regarding the fire of December 31, 2001, during the course of our investigation. The dates of the contacts described are approximate and there may have been additional contacts with each of these individuals and/or entities for which we do not have a precise recollection of the date:

3.1   **Roxanna Boykin**

a.      Date of contact: 03/12/02
b.      Type of statement: Oral
c.      Summary: Witness will call back to reschedule statement.

a.      Date of contact: 03/29/02
b.      Type of statement: Oral
c.      Summary: Scheduled date and time for recorded statement.

a.      Date of contact: 04/01/02
b.      Type of statement: Oral
c.      Summary: Scheduled date and time for recorded statement.

a.      Date of contact: 04/08/02
b.      Type of statement: Oral
c.      Summary: Rescheduling date and time for recorded statement.

a.      Date of contact: 04/09/02
b.      Type of statement: Oral
c.      Summary: The statement was transcribed and a transcript of the proceedings is attached.

3

3.2     **Dyanna Edmonds**

    a.    Date of contact: 01/29/02

    b.    Type of statement: Oral

    c.    Summary: The statement was transcribed and a transcript of the proceedings is attached.

3.3     **Collins Glenn**

    a.    Date of contact: 01/13/02

    b.    Type of statement: Oral

    c.    Summary: Mr. Glenn was interviewed by representatives of Herndon & Associates regarding his background information, his whereabouts at the time of the fire, recent problems with the insured premises, storage of flammable liquids, who has possession of keys, problems with individuals upset with him, missing items and the security of the insured premises.

    a.    Date of contact: 01/28/02

    b.    Type of statement: Oral

    c.    Summary: The statement was transcribed and a transcript of the proceedings is attached.

    a.    Date of contact:   07/08/02

    b.    Type of statement:   Oral

    c.    Summary: The examination under oath was recorded and a transcript of the proceedings is attached.

    a.    Date of contact: 02/15/02

    b.    Type of statement: Oral

    c.    Summary: Requested copies of letters sent to Plaintiff by Northwood Credit Union regarding foreclosure and late payments.

3.4     **Jason Glenn**

    a.    Date of contact: 05/01/02

    b.    Type of statement: Oral

    c.    Summary: The statement was transcribed and a transcript of the proceedings is attached.

4

a.   Date of contact: 05/06/02
b.   Type of statement: Oral
c.   Summary: Julius Glenn (son) was last at his father's house on February 2001.  They have no keys to the insured premises.

## 3.5   Lori Hines

a.   Date of contact: 08/12/02
b.   Type of statement: Oral
c.   Summary: The statement was transcribed and a transcript of the proceedings is attached.

## 3.6   Neighbor at 90 Burlingame

a.   Date of contact: 01/20/02
b.   Type of statement: Oral
c.   Summary: One occupant stated she was not home at the time of the fire and the other occupant did not see anything.  Recalls garage fire 2 years ago.

## 3.7   Neighbor at 89 Burlingame

a.   Date of contact: 01/20/02
b.   Type of statement: Oral
c.   Summary: Occupant did not see anything.

## 3.8   Neighbor at 119 Burlingame

a.   Date of contact: 01/20/02
b.   Type of statement: Oral
c.   Summary: Recalled fire occurred at 2-3 a.m.

## 3.9   Neighbor at 140 Burlingame (Mrs. Weems)

a.   Date of contact: 01/20/02
b.   Type of statement: Oral

5

c.      Summary: Recalled the fire at 2:00-3:00 a.m.
        Doesn't recall anything unusual. Recalled garage fire
        2 years ago.

## 3.10    Statewide Claim Service

a.      Date of contact: 01/14/02
b.      Type of statement: Oral
c.      Summary: Scheduled inspection.

a.      Date of contact: 01/28/02
b.      Type of statement: Oral
c.      Summary: Scene inspection.

a.      Date of contact: 01/29/02
b.      Type of statement: Oral
c.      Summary: Present at transcribed statement of Dyanna Edmonds.

a.      Date of contact: 02/07/02
b.      Type of statement: Oral
c.      Summary: Scheduled appointment for contents
        inspection.

a.      Date of contact: 02/12/02
b.      Type of statement: Oral
c.      Summary: Confirmed inspection appointment.

a.      Date of contact: 04/01/02
b.      Type of statement: Oral
c.      Summary: Claim assigned to Gordan Hileman. PA
        will forward Fairlane materials.

a.      Date of contact: 04/30/02
b.      Type of statement: Oral
c.      Summary: Requested statement of Plaintiff's son and
        Eric Johnson.

a.      Date of contact: 05/01/02
b.      Type of statement: Oral
c.      Summary: Not sure on how to contact Eric Johnson.

a.      Date of contact: 05/22/02

6

b.   Type of statement: Oral
c.   Summary: Confirmed attendance of Plaintiff and Dyanna Edmonds at EUO and SUO.

a.   Date of contact: 08/15/02
b.   Type of statement: Oral
c.   Summary: Still waiting for Bank One records.

a.   Date of contact: 08/20/02
b.   Type of statement: Oral
c.   Summary: Bank One bought Norwood loan. Foreclosure handled by Trott & Trott. Plaintiff paid off Bank One. No one will provide any records to Plaintiff. No SUO from Dyanna Edmonds.

### 3.11   Guaranteed

a.   Date of contact: 02/12/02
b.   Type of statement: Oral
c.   Summary: Dave at Guaranteed advised that he will not be at meeting as Plaintiff advised services are not needed because other contents restoration company is being called.

### 3.12   Northwood Credit Union

a.   Date of contact: 02/15/02
b.   Type of statement: Oral
c.   Summary: Plaintiff paid through 08/01/01. In arrears $1,350. Going into foreclosure.

a.   Date of contact: 02/25/02
b.   Type of statement: Oral
c.   Summary: Plaintiff has not kept current with mortgage payments. Advised investigation of claim is not complete.

a.   Date of contact: 03/13/02
b.   Type of statement: Oral
c.   Summary: Advised no decision made yet on claim.

7

3.13   **Detroit Arson Unit**

    a.    Date of contact: 02/01/02
    b.    Type of statement: Oral
    c.    Summary: Inquired whether fire under investigation.

3.14   **Sgt. Clyburn**

    a.    Date of contact:   02/06/02
    b.    Type of statement: Oral
    c.    Summary: House secured and locked and crew had to force front door entry.

3.15   **Agent**

    a.    Date of contact: 02/19/02
    b.    Type of statement: Oral
    c.    Summary: Not aware that Dyanna Edmonds not married to Plaintiff.  Last time Plaintiff was in office was during water and sewer backup loss (09/00). Trying to get loan from SBA

3.16   **Temporary Housing**

    a.    Date of contact: 04/01/02
    b.    Type of statement: Oral
    c.    Summary: Gas, electricity and water not included in lease.

    a.    Date of contact: 10/31/02
    b.    Type of statement: Oral
    c.    Summary: ALE extended through 11/02.

3.17   **Prudential**

    a.    Date of contact: 05/22/02
    b.    Type of statement: Oral

8

    c.       Summary: No records for Plaintiff of any policy or claims.

3.18   **Craig Freeman**

    a.       Date of contact: 10/31/02
    b.       Type of statement: Oral
    c.       Summary: Discussed basis of denial of claim.

4.    For each person who you may call as a witness at trial, set forth the following:

    a.       name, address and phone number;

    b.       the subject matter on which such person is expected to testify;

    c.       a summary of the person's expected testimony; and

    d.       the relationship, if any, to Defendant.

**ANSWER:**

Our attorneys have not as yet decided upon the witnesses to be called at the time of trial. The following is a list of potential witnesses, however, the list should not be deemed all-inclusive and we reserve our right to call additional witnesses:

4. 1.   Collins Glen
        120 Burlingame Street
        Detroit, Michigan 48202-1000

        <u>Summary of Testimony</u>:   The facts and circumstances surrounding the fire, his activities on the date of the fire, his financial condition, the claim submitted under the policy, and all other facts and information deemed relevant during the course of the trial.

4. 2.   Dyanna Edmonds

        <u>Summary of Testimony</u>: The facts and circumstances surrounding the fire, her activities on the date of the fire, the Plaintiff's financial condition, the claim submitted under the policy, and all other facts and information deemed relevant during the course of the trial.

9

4. 3.    Sharon Ware
         Address unknown

         Summary of Testimony:   The Plaintiff's financial condition and all
         other facts and information deemed relevant during the course of the
         trial.

4. 4.    Jason Glenn
         6616 Seahurst Drive
         Canal Winchester, Ohio 43110
         (614) 446-2945

         Summary of Testimony:   The whereabouts of the Plaintiff on the
         night of the fire and all other facts and information deemed relevant
         during the course of the trial.

4. 5.    Roxanne Boykin
         2473 Prince Hall Drive
         Detroit, Michigan 48207
         (313) 833-9592

         Summary of Testimony:   The facts and circumstances surrounding
         the fire and all other facts and information deemed relevant during the
         course of the trial.

4. 6.    Cleo Glenn
         Address unknown

         Summary of Testimony:   The facts and circumstances surrounding
         the fire and all other facts and information deemed relevant during the
         course of the trial.

4. 7.    Representatives of the Detroit Fire Department, including, but not
         limited to:

         a.    Sergeant Carlton Clyburn
         b.    Michael J. Lubig (FFDA)

         Summary of Testimony:   The facts and circumstances surrounding
         the fire, their observation of the fire scene, the security of the insured
         premises, their investigation of the fire, and all other facts and
         information deemed relevant at the time of trial.

10

4. 8.    Representatives of Smart Transportation
Address unknown

Summary of Testimony:    The Plaintiff's employment from 1994
through 1999, his financial condition, and all other facts and
information deemed relevant at the time of trial.

4. 9.    Representatives of Northwood Credit Union, including, but not
limited to:

a.    Chris Shroyer

30606 Woodward Avenue
Royal Oak, Michigan 48073

Summary of Testimony: The Plaintiff's financial condition, the status
of Plaintiff's account, and all other facts and information deemed
relevant at the time of trial.

4. 10.    Representatives of the City of Highland Park

Summary of Testimony:    The violations for the Plaintiff's business
called," Cajun J's Shrimp Shack," and all other facts and information
deemed relevant at the time of trial.

4. 11.    Representatives of Bank One
100 East Broad Street
Columbus, Ohio 43271

Summary of Testimony: The Plaintiff's financial condition, the status
of Plaintiff's account, any foreclosure proceedings, and all other facts
and information deemed relevant at the time of trial.

4. 12.    Trott & Trott

Summary of Testimony:    The Plaintiff's financial condition, the
status of the Plaintiff's foreclosure proceedings with Bank One, and
all other facts and information deemed relevant at the time of trial.

11

4. 13.   Representatives of Friend of the Court

Summary of Testimony:   The status of the Plaintiff's child support payments for Monzie Edmonds, and all other facts and information deemed relevant at the time of trial.

4. 14.   Representatives of the Small Business Administration
801 Tom Martin Drive, Suite 120
Birmingham, Alabama 35211-6424

Summary of Testimony:   The Plaintiff's financial condition, the status of Plaintiff's account, and all other facts and information deemed relevant at the time of trial.

4. 15.   Representatives of Statewide Claim Service, including, but not limited to:

a.      Gordon Hileman
b.      Paul Conrad

216 S. Main, Suite 100
Northville, Michigan 48167

Summary of Testimony:   The facts and circumstances surrounding the fire, their relationship with the Plaintiff, their involvement in the preparation of the Plaintiff's claims, and all other facts and information deemed relevant at the time of trial.

4. 16.   Representatives of Fairlane Furniture
38300 Abruzzi Drive
Westland, Michigan 48185
(734) 729-6100

Summary of Testimony:   Their involvement in the preparation of the Plaintiff's claims, and all other facts and information deemed relevant at the time of trial.

4. 17.   Representatives of Recovery Cleaners, including, but not limited to:

a.      Jackie Schaefer

Summary of Testimony:   The condition of the Plaintiff's personal property, the estimated cost of cleaning the Plaintiff's personal property, and all other facts and information deemed relevant at the time of trial.

4. 18.   Michelle Osburn
Claim Specialist
State Farm Fire and Casualty Company
P.O. Box 51790
Livonia, Michigan 48151

Summary of Testimony:  The facts and circumstances surrounding the fire; her observations of the fire scene; her communications with the Plaintiff, representatives of the Detroit Fire Department and witnesses; her investigation of the fire and of the Plaintiff's claims under the insurance policy sued upon; and all other facts and information deemed relevant at the time of trial.

4. 19.   Suzanne Kaigler
Team Manager
State Farm Fire and Casualty Company
P.O. Box 51790
Livonia, Michigan 48151

Summary of Testimony:  State Farm's investigation of the fire and of the Plaintiff's claims under the insurance policy sued upon, and all other facts and information deemed relevant at the time of trial.

4. 20.   Pat Kennedy
State Farm Fire and Casualty Company
P.O. Box 51790
Livonia, Michigan 48151

Summary of Testimony: State Farm's building estimate, and all other facts and information deemed relevant at the time of trial

4. 21.   Julius Glenn
Address unknown

Summary of Testimony: The last time he was at the insured premises, and all other facts and information deemed relevant at the time of trial.

13

4. 22.   Cynthia Harrison
         Address unknown

         Summary of Testimony:   The last time her son was at the insured
         premises, the fact that neither she nor her son have keys to the insured
         premises, and all other facts and information deemed relevant at the
         time of trial.

4. 23.   Eric Johnson
         1685 Oakman, Apt. 3
         Detroit, Michigan 48238
         (313) 865-6927

         Summary of Testimony:   His employment at the Plaintiff's business,
         and all other facts and information deemed relevant at the time of
         trial.

4. 24.   Lori Hines
         17357 Cherish
         Detroit, Michigan

         Summary of Testimony:   Her employment at the Plaintiff's business,
         and all other facts and information deemed relevant at the time of
         trial.

4. 25.   Representatives of MichCon

         Summary of Testimony:   The authenticity of the utility records of the
         Plaintiff, the account history, the status of the account at the time of
         fire, and all other facts and information deemed relevant at the time
         of trial.

4. 26.   Representatives of DTE Energy
         P.O. Box 2859
         Detroit, Michigan 48260-0001

         Summary of Testimony:   The authenticity of the utility records of the
         Plaintiff, the account history, the status of the account at the time of
         fire, and all other facts and information deemed relevant at the time
         of trial.

14

4. 27.  Michelle Sims
        2785 S. Fort Street
        Detroit, Michigan 48217
        (313) 928-1348

        Summary of Testimony: The Plaintiff's coverage, the claims
        submitted under the policy, and all facts and information deemed
        relevant at the time of trial.

4. 28.  Representatives of Seal Tab, Inc., including, but not limited to:

        a.      John J. Kopy

        216 S. Main, Suite 200
        Northville, Michigan 48167

        Summary of Testimony:    The facts and circumstances surrounding
        the fire, observation of the fire scene and condition of the insured
        property, and all other facts and information deemed relevant at the
        time of trial.

4. 29.  Representatives of Temporary Housing
        25321 Five Mile Road, Suite 2
        Redford, Michigan 48239

        Summary of Testimony: Additional living expenses incurred after the
        December 31, 2001 fire, and all other facts and information deemed
        relevant at the time of trial.

4. 30.  Representatives of the Residence Inn
        26700 Central Park Blvd.
        Southfield, Michigan 48076

        Summary of Testimony:  Additional living expenses incurred after the
        December 31, 2001 fire, and all other facts and information deemed
        relevant at the time of trial.

15

5.    State the names, addresses and telephone numbers of any and all proposed expert witnesses Defendant intends to call at the time of this matter, and identify the field in which Defendant claims they are experts and for each expert set forth:

      a.    A complete statement of all opinions to be expressed by each expert and the reasons therefore;

      b.    The data or other information considered by the witness in forming the opinions;

      c.    Any exhibits to be used as a summary of or support for the opinions;

      d.    The qualifications of the witness including a list of all publications authored by the witness in the preceding (10) ten years;

      e.    The compensation to be paid to the witness for the study or testimony; and

      f.    A list of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding (10) ten years.

**ANSWER:**

Our attorneys have not yet decided upon the expert witnesses to be called at the time of trial. The following is a list of potential expert witnesses; however, the list should not be deemed all-inclusive and we reserve our right to call additional expert witnesses:

5.1.    Dan Terski
        Jeff Terski
        Herndon & Associates
        36135 Schoolcraft
        Livonia, Michigan 48150

      a.    Messrs. Terskis are of the opinion that the fire was caused by a deliberate pouring of a flammable or combustible liquid from the area of the couch on the south wall, across the floor, and to the loveseat in the

16

northeast corner of the first floor living room area, and the subsequent ignition of those vapors;

b.  Messrs. Terskis' opinion is based upon the following facts:

    i.  observations of the burn patterns;

    ii.  an interview with the Plaintiff;

    iii.  a physical inspection of the insured premises;

    iv.  ruling out of all accidental causes, including mechanical and electrical systems;

    v.  the gas chromatographic analysis of debris materials by Great Lakes Analytical; and

    vi.  weather conditions on the day of the fire.

c.  Our attorneys and experts have not as yet decided what documents may be used to illustrate and/or support Messrs Terskis' testimony; however, it is anticipated that Messrs. Terskis may rely upon photographs and diagrams of the fire scene;

d.  Messrs. Terskis' curriculum vitaes are attached;

e.  We intend to compensate Messrs. Terskis for their time, including deposition and trial testimony, on the basis of an hourly rate.  However, at this time, we do not know how many hours Messrs. Terskis will spend preparing for and testifying in this case; and

f.  See attached curriculum vitaes.

17

5.2     Dirk Hedglin
        Great Lakes Analytical, Inc.
        25402 Harper Avenue
        St. Clair Shores, Michigan 48081

     a.    Gas chromatographic analysis of debris materials removed from the fire scene revealed the presence of kerosene class products;

     b.    Analysis of gas chromatography/mass spectrometry;

     c.    Our attorneys and expert have not as yet decided what documents may be used to illustrate and/or support this testimony; however, it is anticipated that our expert may rely upon the gaschromatographic analysis of the debris materials from the fire scene;

     d.    See attached curriculum vitae;

     e.    We intend to compensate Mr. Hedglin for his time, including deposition and trial testimony, on the basis of an hourly rate.  However, at this time, we do not know how many hours Mr. Hedglin will spend preparing for and testifying in this case; and

     f.    See attached curriculum vitae.

6.     Fully identify all documentary or other physical evidence which Defendant may introduce at trial in this matter in support of its defense of Plaintiff's claim. In lieu of the foregoing, please attach true copies of the same to your answers to these Interrogatories.

**ANSWER:**

Our attorneys have not as yet decided upon the physical evidence and documents to be introduced at the time of trial.  The Plaintiff is directed to the non-privileged documents identified on Appendix "A" as potential exhibits.   Copies of these materials and documents are attached.  However, this list is not all-inclusive and we

18

reserve our right to introduce additional exhibits and documents and physical evidence at the time of trial.

7.    Have you obtained any written statements from any persons who have any knowledge of the incident complained of herein, and if so, state as to each such statement:

      a.    The name and address of the person making the statements;

      b.    The date said statements were made;

      c.    Whether the statements were written, oral or by recording device;

      d.    The name and address of the person who took said statements;

      e.    The name and address of the person in possession of the statements; and

      f.    Please attach copies of each such statement so as to avoid the necessity of a Motion to Produce.

**ANSWER:**

See our Answer to Interrogatory No. 3 above.

8.    Set forth, in detail, Defendant's theory as to how the fire in question was started, who started it, and list and identify the nature and extent of all evidence to support such theory.

**ANSWER:**

None of our representatives, employees, or investigators were present at the time the fire was ignited and, therefore, we do not now precisely who ignited the fire or the source of ignition. However, we believe that the fire was intentionally set by and/or at the direction of Collins Glenn and/or with his knowledge and consent. The following facts and evidence will be introduced at the time of trial to establish that the fire was intentionally set:

19

8.1   The fire incident report, which was prepared by Detroit Fire Department Sergeant, Carlton Clyburn, lists the probable act or omission as "suspicious";

8.2   The residence was secured when the fire department arrived and they had to force entry into the dwelling through the front door;

8.3   Messrs. Dan Terski and Jeff Terski, private professional fire investigators with Herndon & Associates, have ruled out all electrical and mechanical causes for the fire, and have concluded that the fire was the result of human hands;

8.4   Inspections of the premises by qualified fire investigators have concluded that the fire was caused by a deliberate pouring of a flammable or combustible liquid from the area of the couch on the south wall, across the floor, and to the loveseat in the northeast corner of the living room, and the subsequent ignition of those vapors;

8.5   Fire investigators noticed an unusual odor on the curtains found near the rear of the couch on the south wall of the living room;

8.6   Gas chromatographic analysis of debris materials removed from the fire scene revealed the presence of kerosene class products; and

8.7   Only the Plaintiff, Dyanna Edmonds and the Plaintiff's mother have keys to security doors to the premises.

9.   Identify the person, or persons who authorized the denial of the claim.

**ANSWER:**

Suzanne Kaigler, Team Manager, State Farm Fire and Casualty Company.

10.   Identify the person, or persons who were in charge of the investigation of Plaintiff's

claim.

20

**ANSWER:**

Suzanne Kaigler, Team Manager, State Farm Fire and Casualty Company; and
Michelle Osburn, Claim Specialist, State Farm Fire and Casualty Company.

11.    For each and every Affirmative Defense set forth in Defendant's Affirmative

Defenses, please set forth:

      a.     The legal basis for the affirmative defense;

      b.     The factual basis for the affirmative defense;

      c.     Identify all witnesses who will support said factual
             allegations, as well as a brief synopsis of their
             expected testimony at the time of trial; and

      d.     Identify and attach all documents which Defendant
             contends will support each of said conclusions.

**ANSWER:**

11.1    **First Defense - Failure to State Claim**

      a.     The Federal Rules of Civil Procedure, MCL
             500.2833, et. seq., MCL 500.2006, MCL 445.901 et.
             seq., and all appellate court decisions relating to these
             claims and allegations;

      b.     In support of our position that the Plaintiff's
             Complaint includes counts and allegations which fail,
             as a matter of law, to state valid claims upon which
             legal relief may be granted, we intend to rely upon the
             following facts as disclosed elsewhere in these
             Answers to Interrogatories that we have a sufficient
             factual and legal basis for our position that:

            1.     The Plaintiff is not entitled to recover under
                 the insurance policy sued upon;

21

2.  The Plaintiff's rights, if any, to recover under the policy are "reasonably in dispute" within the meaning of the Uniform Fair Trade Practices Act, MCL 500.2006; and

3.  We have properly investigated the Plaintiff's claims under the insurance policy and conducted ourselves in good faith;

c.  Refer to our Answers to Interrogatory Nos. 4 and 5 above; and

d.  Refer to our Answer to Interrogatory No. 6 above.

## 11.2.  Second Defense - Non-Fortuitous Loss

a.  The provisions of the insurance policy sued upon and all applicable appellate court decisions relating to this defense.

b.  Refer to our Answer to Interrogatory No. 8 above;

c.  Refer to our Answers to Interrogatory Nos. 4 and 5 above; and

d.  Refer to our Answer to Interrogatory No. 6 above.

## 11.3   Third Defense - Intentional Act

a.  The provisions of the insurance policy sued upon and all applicable appellate court decisions relating to this defense.

b.  Refer to our Answer to Interrogatory No. 8 above;

c.  Refer to our Answers to Interrogatory Nos. 4 and 5 above; and

d.  Refer to our Answer to Interrogatory No. 6 above.

11.4    **Fourth Defense - Concealment or Fraud**

     a.     The provisions of the insurance policy sued upon and all applicable appellate court decisions relating to this defense;

     b.     During discussions with our claim representatives and investigators, in his Sworn Statement in Proof of Loss and during an Examination Under Oath, the Plaintiff falsely represented that he had no knowledge regarding the cause and origin of the fire of December 31, 2001, and he concealed the true facts that he deliberately set or arranged for the setting of the fire or that he knew of and consented to the setting of the fire;

     c.     Refer to our Answers to Interrogatory Nos. 4 and 5 above; and

     d.     Refer to our Answer to Interrogatory No. 6 above.

11.5    **Fifth Defense - Non-Compliance with Loss Requirements**

     a.     The insurance policy sued upon and all applicable appellate court decisions relating to this defense;

     b.     The Plaintiff failed to provide requested records and documents, including income tax returns for 2001, documents regarding his SBA loan utilizing the house as collateral, etc.;

     c.     Refer to our Answers to Interrogatory Nos. 4 and 5 above; and

     d.     Refer to our Answer to Interrogatory No. 6 above.

23

11.6.   **Sixth Defense - Claim of Offset**

a.      The insurance policy sued upon and all applicable appellate court decisions relating to this defense.

b.      In the event we are required to make payments to Bank One, Northwood Credit Union and/or the Small Business Administration, and the Plaintiff is awarded any money in connection with this lawsuit or otherwise, we are entitled to offset any amounts paid from the award amount;

c.      Refer to our Answers to Interrogatory Nos. 4 and 5 above; and

d.      Refer to our Answer to Interrogatory No. 6 above.


11.7    **Seventh Defense - Loss Deductible**

a.      The insurance policy sued upon and all applicable appellate court decisions relating to this defense;

b.      The policy of insurance sued upon contains a $500.00 deductible as reflected within the declarations;

c.      Refer to our Answers to Interrogatory Nos. 4 and 5 above; and

d.      Refer to our Answer to Interrogatory No. 6 above.


11.8.   **Eighth Defense - Reservation of Rights**

a.      The Federal Rules of Civil Procedure and statutes and all applicable  court decisions relating to this defense;

b.      Not applicable;

c.      Not applicable; and

24

      d.      The Federal Rules of Civil Procedure and statutes and
                 all applicable  court decisions relating to this defense.

12.     For each Affirmative Defense asserted by the Defendant, set forth:

      a.      The factual basis for each Affirmative Defense;

      b.      The legal basis for the Affirmative Defense;

      c.      All witnesses who will testify in support of each
                 defense;

      d.      All documents that will support each defense.

**ANSWER:**

Refer to our Answer to Interrogatory No. 11 above.

13.     Having alleged in Paragraph 1 of your October 31, 2002 denial letter "this is not a covered loss by the policy, as it is not an accidental, direct physical loss" set forth:

      a.      The factual basis for this allegation;

      b.      The legal basis for this allegation;

      c.      All witnesses who will testify in support of each
                 defense;

      d.      All documents that will support each defense.

**ANSWER:**

      a.      Refer to our Answer to Interrogatory No. 8 above;

25

b.      Refer to the provisions of the insurance policy sued upon and all applicable appellate court decisions relating to this provision in the denial letter;

c.      Refer to our Answers to Interrogatory Nos. 4 and 5 above; and

d.      Refer to our Answer to Interrogatory No. 6 above.


14.     Having alleged in Paragraph 2 of your October 31, 2002 denial letter that "you have intentionally procured this loss in order to obtain insurance benefits" set forth:

a.      The factual basis for this allegation;

b.      The legal basis for this allegation;

c.      All witnesses who will testify in support of each defense;

d.      All documents that will support each defense.

**ANSWER:**

a.      Refer to our Answer to Interrogatory No. 8 above;

b.      Refer to the provisions of the insurance policy sued upon and all applicable appellate court decisions relating to this provision in the denial letter.

c.      Refer to our Answers to Interrogatory Nos. 4 and 5 above; and

d.      Refer to our Answer to Interrogatory No. 6 above.

26

15.     Having alleged in Paragraph 3 of your October 31, 2002 letter that "contrary to the provisions of the policy, and the company's request for same, you have willfully refused and failed to submit requested documentation and failed to comply with your duties after a loss," set forth:

    a.     The factual basis for this allegation;

    b.     The legal basis for this allegation;

    c.     All witnesses who will testify in support of each defense;

    d.     All documents that will support each defense.

**ANSWER:**

    a.     Refer to our Answer to Interrogatory No. 11.5 above;

    b.     Refer to the provisions of the insurance policy sued upon and all applicable appellate court decisions relating to this provision in the denial letter.

    c.     Refer to our Answers to Interrogatory Nos. 4 and 5 above; and

    d.     Refer to our Answer to Interrogatory No. 6 above.

16.     Having alleged in Paragraph 4 of your October 31, 2002 letter that "you have intentionally misrepresented and concealed material facts and circumstances relating to this loss and have committed fraud and false swearing relating to this loss which bars your claim and voids the policy effective December 31, 2001," set forth:

    a.     The factual basis for this allegation;

    b.     The legal basis for this allegation;

27

c.      Each and every intentional misrepresentation and concealment of material fact and each and every item of false swearing which you allege Plaintiff engaged in;

d.      Each document containing an alleged intentional misrepresentation and concealment of material fact and fraud and false swearing identifying with specificity the precise misrepresentation concealment of material fact, fraud and false swearing which you allege voids the policy;

e.      The page and line number for each and every alleged intentional misrepresentation in concealment of material fact and fraud and false swearing which you contend bars Plaintiff's claim and voids the policy as contained in any examination under oath transcript, written statement made by the Plaintiff, recorded statement made by Plaintiff, or sworn statement made by Plaintiff;

f.      All witnesses who will testify in support of each defense; and

g.      All documents that will support each defense.

**ANSWER:**

a.      Refer to our Answer to Interrogatory No. 11.4 above;

b.      Refer to the provisions of the insurance policy sued upon and all applicable appellate court decisions relating to this provision in the denial letter;

c.      The Plaintiff falsely testified that he had no involvement, participation or knowledge relating to the setting of the December 31, 2001 fire;

d.      A document entitled, "Sworn Statement in Proof of Loss." The Plaintiff falsely indicated that the cause and origin of the December 31, 2001 fire was "uncertain."

      e.          Pursuant to FRCP 33(d), the burden of deriving or ascertaining the answer to this Interrogatory is substantially the same for the Plaintiff and, in further answer, Defendant refers Plaintiff to Plaintiff's Examination Under Oath transcript;

      f.          Refer to our Answers to Interrogatory Nos. 4 and 5 above; and

      g.          Refer to our Answer to Interrogatory No. 6 above.

17.     Please identify the name, address and telephone number of the person in charge of the investigation of Plaintiff's claim.

**ANSWER:**

Refer to our Answer to Interrogatory No. 10 above.

18.     Please identify the name, address and telephone number of the person who authorized the denial of this claim.

**ANSWER:**

Refer to our Answer to Interrogatory No. 9 above.

19.     For each person who you may call as a witness at trial, set forth the following:

      a.          name, address and phone number;

      b.          the subject matter on which such person is expected to testify;

      c.          a summary of the person's expected testimony;

      d.          the relationship, if any, to Defendant;

e.     All facts that support your answer;

f.     All documents that support your answer;

g.     All witnesses that support your answer.

**ANSWER:**

Refer to our answer to Interrogatory No. 4 above.

20.     State the names, addresses and telephone numbers of any and all proposed expert witnesses Defendant intends to call at the trial of this matter, and identify the field in which Defendant claims they are experts and for each expert set forth:

a.     A complete statement of all opinions to be expressed by each expert and the reasons therefore;

b.     The date or other information considered by the witness in forming the opinions;

c.     Any exhibits to be used as a summary of or support for the opinions;

d.     The qualifications of the witness including a list of all publications authored by the witness in the preceding (10) ten years;

e.     The compensation to be paid to the witness for the study or testimony; and

f.     A list of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding (10) ten years.

**ANSWER:**

Refer to our Answer to Interrogatory No. 5 above.

30

21.   With respect to the dwelling, set forth:

    a.   The policy limits;

    b.   What Defendant contends the actual cash value of the loss is;

    c.   The replacement cost of value of the home;

    d.   The replacement cost value of the loss;

    e.   All documents that support your answer; and

    f.   All witnesses that support your answer.

**ANSWER:**

    a.   $222,086.00;

    b.   Although our building estimate, prepared by Pat Kenned on May 7, 2002, assesses the actual cash value of the dwelling loss at $117,292.22, we believe that the Plaintiff is not entitled to recover for this loss for the reasons set forth in our denial letter, dated October 31, 2002, and our affirmative defenses;

    c.   Although our building estimate, prepared by Pat Kenned on May 7, 2002, assesses the replacement cost value of the dwelling loss at $117,292.22, we believe that the Plaintiff is not entitled to recover for this loss for the reasons set forth in our denial letter, dated October 31, 2002, and our affirmative defenses;

    d.   Refer to our Answer to Interrogatory No. 21(c) above;

    e.   Refer to our Answer to Interrogatory No. 6 above; and

    f.   Refer to our Answers to Interrogatory Nos. 4 and 5 above.

31

22.    With respect to Plaintiff's contents claim, set forth:

    a.    The policy limits on contents;

    b.    The actual cash value of the contents lost or destroyed in the fire;

    c.    The replacement cost value of the contents lost and destroyed in the fire;

    d.    All documents that support your answer; and

    e.    All witnesses that support your answer.

**ANSWER:**

    a.    $166,565.00;

    b.    Although our Contents Inventory Summary, dated October 1, 2002, assesses the actual cash value of the Plaintiff's contents at $57,429.26, we believe that the Plaintiff is not entitled to recover for this loss for the reasons set forth in our denial letter, dated October 31, 2002, and our affirmative defenses;

    c.    Although our Contents Inventory Summary, dated October 1, 2002, assesses the replacement cost value of the Plaintiff's contents at $131,900.73, believe that the Plaintiff is not entitled to recover for this loss for the reasons set forth in our denial letter, dated October 31, 2002, and our affirmative defenses;

    d.    Refer to our Answer to Interrogatory No. 6 above; and

    e.    Refer to our Answers to Interrogatory Nos. 4 and 5 above.

23.     With respect to the building claim submitted by the Plaintiff set forth by item each and every disagreement Defendant has with Plaintiff's building estimate and for each such disagreement set forth:

      a.     Whether the disagreement relates to scope or amount of damage;

      b.     The reason for the disagreement;

      c.     What Defendant contends the correct scope or amount of damage is for each item;

      d.     Each witness who will testify in support of Defendant's position; and

      e.     All documents that will support Defendant's position.

**ANSWER:**

      a.     The scope and amount of damage differential is $6,349.01;

      b.     Refer to our answer to Interrogatory No. 23.a. above;

      c.     The total damage to the dwelling is $140,750.66;

      d.     Refer to our Answers to Interrogatory Nos. 4 and 5 above, including, but not limited to Pat Kennedy and Michelle Osburn;

      e.     Refer to our Answer to Interrogatory No. 6 above. Specifically, the attached Summary for Fire.

24.     For each and every item of personal property claimed by Plaintiff for which Defendant disagrees with scope or damage set forth:

33

a.     The identity of the item for which the disagreement exists;

b.     Whether the disagreement relates to scope, damage or other;

c.     The exact nature of the disagreement;

d.     What Defendant contends the amount of loss and damage is for each item for which Defendant has a disagreement.

**ANSWER:**

We are in the process of obtaining this information.   Upon receipt, we will supplement the answer to this interrogatory.

25.     With respect to the additional living expenses, set forth:

a.     The policy limits for additional living expenses;

b.     What Defendant contends the period of restoration is;

c.     What Defendant contends the monthly additional living expense is;

f. (sic) All documents that support your answer; and

d.     All witnesses that support your answer.

**ANSWER:**

a.     Actual;

b.     The additional living expenses expired on October 31, 2002, the date of the denial of the claim;

c.     The Plaintiff is not entitled to any additional living expenses because the claim was denied on October 31, 2002;

34

f.(sic)  Refer to our Answer to Interrogatory No. 6 above; and

d.      Refer to our Answers to Interrogatory Nos. 4 and 5 above.

_____

SUZANNE KAIGLER
TEAM MANAGER

| | |
|---|---|
| STATE OF MICHIGAN | ) |
| | ) SS |
| COUNTY OF _____ | ) |

Before me personally appeared the above signed **Suzanne Kaigler** and states that she has read the foregoing **Objections and Answers to Plaintiff's First Interrogatories** and attests that the Answers are true and correct to the best of her knowledge and belief, except as to those matters stated to be upon information and belief, and as to those matters, she believes them to be true.

Subscribed and sworn before me
this _____ day of _____, 2003.

_____

NOTARY PUBLIC
_____ County, Michigan
My Commission Expires: _____

Respectfully submitted,

**PATRICK, JOHNSON & MOTT, P.C.**

_____

ROBERT L. MOTT, JR. (P27942)
Attorneys for Defendant
27777 Franklin Road, Suite 1100
Southfield, Michigan 48034
(248) 356-8590

DATED:     June _____, 2003

35

APPENDIX "A" TO
DEFENDANT'S OBJECTIONS AND ANSWERS TO
PLAINTIFF'S FIRST INTERROGATORIES

RE:   **Collins Glenn v State Farm Fire and Casualty Company**
      **United States District Court for the Eastern District of Michigan**
      **Case No. 03-60066**

Listed below are records and documents contained within the Defendant's files
regarding this claim to which it has no objections to produce:

1.   Homeowners/Condominium Unitowners Application, dated 05/08/99
     (2 pgs);

2.   State Farm Homeowners Insurance Policy, including endorsements
     and declarations;

3.   Document entitled, "Sworn Statement in Proof of Loss," dated
     02/25/02;

4.   Statement of Loss (2 pgs);

5.   Personal property inventory prepared by Statewide Claim Service,
     dated 01/30/02 (32 pgs);

6.   Two (2) personal property inventories prepared by Statewide Claim
     Service w/handwritten notations, dated 01/30/02 (32 pgs);

7.   Personal property inventory prepared by Statewide Claim Service,
     dated 02/27/02 (30 pgs);

8.   Personal property inventory prepared by Statewide Claim Service,
     dated 03/25/02 (33 pgs);

9.   Personal property inventory prepared by Statewide Claim Service,
     dated 04/12/02 (third revision) w/handwritten notations;

10.  List of Play Station Games by Title;

11.  List of items in backyard;

12.  Contents Inventory Summary, dated 09/20/02 (12 pgs);

13.  Contents Inventory Summary, dated 09/25/02 (12 pgs);

14.   Contents Inventory Summary, dated 10/01/02 (12 pgs);

15.   Yearly Purchase Summary, dated 09/25/02;

16.   Building estimate prepared by Statewide Claim Service, dated
      01/10/02 (24 pgs);

17.   Building estimate prepared by Statewide Claim Service, dated
      01/29/02 (29 pgs);

18.   Building estimate prepared by Statewide Claim Service
      w/handwritten notations, dated 01/29/02 (29 pgs);

19.   Building estimate prepared by Statewide Claim Service, dated
      02/19/02 (29 pgs);

20.   Document entitled, "Major Home Renovations";

21.   Building estimate prepared by State Farm, dated 05/07/02 (35 pgs);

22.   Mortgage (Bank One), dated 12/16/99 (13 pgs);

23.   Mortgagor's Statement, dated 12/16/99 (2 pgs);

24.   Certificate for Group Credit Insurance (American Bankers Life
      Assurance Company), dated 12/16/99;

25.   Safeline Payment Protection Plan, dated 12/16/99;

26.   Bank One Disbursement Request and Authorization, dated 12/16/99;

27.   Agreement to Provide Insurance, dated 12/16/99;

28.   Quitclaim Deed, dated 08/07/98 (2 pgs);

29.   Quitclaim Deed, dated 06/20/85;

30.   Warranty Deed, dated 07/09/99;

31.   Closing Statement, dated 07/9/99;

32.   Statewide Claim Service agreement, dated 12/31/01;

2

33.  Letter to State Farm from Statewide Claim Service, dated 01/03/02;

34.  Letter to Collins Glen from State Farm, dated 02/04/02 (3 pgs);

35.  Letter to State Farm from Statewide Claim Service, dated 02/08/02;

36.  Letter to Collins Glen from State Farm, dated 02/12/02 (2 pgs);

37.  Letter to Collins Glen from State Farm, dated 02/13/02 (2 pgs);

38.  Statewide Claim Service draft directive, dated 02/25/02;

39.  Statewide Claim Service receipt for claim package, dated 02/28/02;

40.  Letter to State Farm from Statewide Claim Service, dated 02/28/02;

41.  Letter to State Farm from Statewide Claim Service, dated 02/28/02 (2 pgs);

42.  Letter to Eric Johnson from State Farm, dated 03/05/02;

43.  Letter to Roxanne Boykin from State Farm, dated 03/05/02;

44.  Letter to Jason Glenn from State Farm, dated 03/05/02;

45.  Letter to Statewide Claim Service from State Farm, dated 03/05/02 (2 pgs);

46.  Letter to Statewide Claim Service from State Farm, dated 03/13/02;

47.  Letter to Statewide Claim Service from State Farm, dated 03/19/02;

48.  Letter to State Farm from Statewide Claim Service, dated 03/27/02;

49.  Letter to Statewide Claim Service from State Farm, dated 04/01/02;

50.  Letter to Jason Glenn from State Farm, dated 04/01/02;

51.  Letter to Eric Johnson from State Farm, dated 04/02/02;

52.  Letter to State Farm from Statewide Claim Service, dated 04/12/02;

53.  Letter to Collins Glenn from State Farm, dated 05/08/02 (2 pgs);

3

54.  Letter to Prudential Property and Casualty from State Farm, dated 05/13/02;

55.  Letter to Collins Glenn, III and Dyanna Edmonds from Patrick, Johnson & Mott, P.C., dated 05/15/02 (3 pgs);

56.  Letter to Collins Glenn, III and Dyanna Edmonds from Patrick, Johnson & Mott, P.C., dated 05/23/02 (2 pgs);

57.  Letter "To Whom It May Concern" from Dyanna V. Edmonds, dated 06/17/02;

58.  Letter to Collins Glenn, III from State Farm, dated 07/10/02 (2 pgs);

59.  Letter to Craig R. Freeman from Patrick, Johnson & Mott, P.C., dated 07/30/02 (2 pgs);

60.  Letter to State Farm from Collins Glenn, III, dated 08/01/02;

61.  Letter to Patrick, Johnson & Mott, P.C. from Craig R. Freeman, dated 08/01/02;

62.  Letter to Patrick, Johnson & Mott, P.C. from Collins Glenn, III, dated 08/09/02;

63.  Letter to Collins Glenn, III from State Farm (denial), dated 10/31/02 (2 pgs);

64.  Letter to Collins Glenn from State Farm, dated 11/20/02;

65.  Income Withholding Order, Dyanna Edmonds v Collins Glenn, III, Macomb County Circuit Court Case No. 2001-7151 DS, dated 05/14/02;

66.  Proof of Service, Dyanna Edmonds v Collins Glenn, III, Macomb County Circuit Court Case No. 2001-7151 DS, dated 05/17/02;

67.  Trott & Trott funds receipt, dated 07/31/02;

68.  Cashier's check no. 103725 payable to "Bank One, N.A.," dated 07/30/02 ($39,797.86);

69.  Money order no. 697589286 payable to "Trott & Trott," ($218.00)

4

70.     Cajun J's Monthly statements (July 2001-December 2001) (6 pgs);

71.     Fire Claim Service Record (redacted - 01/10/02 - forward) (redacted)(5 pgs);

72.     Trans Union Credit Report, dated 01/30/02 (2 pgs);

73.     Equifax Credit Report, dated 01/30/02;

74.     Herndon & Associates Consent to Search, dated 01/09/02;

75.     Request for Claim Service and Non-Waiver of Rights, dated 01/28/02;

76.     Authorization (Dyanna Edmonds), dated 01/29/02;

77.     Authorization (Collins Glenn), dated 01/28/02;

78.     Seal Tab, Inc. temporary repair contract, dated 01/01/02;

79.     Seal Tab, Inc. temporary repair invoice, dated 01/03/02;

80.     Letter to State Farm from Seal Tab, Inc., dated 01/03/02;

81.     Statewide Claim Service Fax to State Farm, dated 04/01/02;

82.     Fairlane Furniture Restorers contents estimate, dated 02/13/02 (20 pgs);

83.     Rental Agreement w/Temporary Housing, dated 01/14/02;

84.     Temporary Housing Authorization to Pay and Acceptance and Receipt, dated 01/14/02;

85.     Temporary Housing Facsimile Transmittal Sheet to State Farm, dated 01/15/02

86.     Temporary Housing, Inc. payment request, dated 01/15/02;

87.     Temporary Housing, Inc. payment request, dated 03/25/02;

88.     Temporary Housing Facsimile Transmittal Sheet to State Farm, dated

5

03/26/02;

89.   Temporary Housing, Inc. payment request, dated 04/23/02;

90.   Temporary Housing, Inc. payment request, dated 05/30/02;

91.   Temporary Housing, Inc. payment request, dated 06/27/02;

92.   Temporary Housing, Inc. payment request, dated 07/29/02;

93.   Temporary Housing, Inc. payment request, dated 09/05/02;

94.   Temporary Housing, Inc. payment request, dated 10/01/02;

95.   Residence Inn guest folio summary, dated 01/14/02;

96.   Residence Inn Southfield invoice, dated 01/14/02;

97.   Letter to State Farm from Residence Inn, dated 02/19/02;

98.   Residence Inn Southfield invoice, dated 02/21/01;

99.   Residence Inn guest folio summary, dated 02/21/02;

100.  Letter to U.S. Small Business Administration from State Farm, dated 02/13/02 (2 pgs);

101.  Certificate of Hazard Insurance (adding U.S. Small Business Administration as mortgagee);

102.  Inspection of Residential Real Estate, dated 05/21/99;

103.  Home Equity Loan Application (2 pgs);

104.  Letter to Northwood Transportation Credit Union from State Farm, dated 02/13/02 (2 pgs);

105.  Letter to Northwood Transportation Credit Union from State Farm w/handwritten answers, dated 02/13/02 (2 pgs);

106.  Transcribed statement of Jason Glenn taken on 05/01/02 (13 pgs);

107.  Transcribed statement of Collins Glenn taken on 01/28/02 (30 pgs);

6

108.  Transcribed statement of Dyanna Edmonds taken on 01/29/02 (48 pgs);

109.  Transcribed statement of Roxanna Boykin taken on 04/09/02 (8 pgs);

110.  Transcribed statement of Lori Hines taken on 08/12/02 (3 pgs);

111.  Transcribed of Examination Under Oath of Collins Glenn, III, taken on 07/08/02 (152 pgs);

112.  MFIRS-A Incident Report, dated 12/31/01;

113.  Diagram of insured premises prepared by Herndon & Associates;

114.  Four (4) handdrawn diagrams;

115.  Herndon & Associates invoice no. 39989, dated 01/18/02;

116.  www.waynecountylandrecords.com search (9 pgs);

117.  Real Property Inquiry System Property Data & Long Legal Descriptions, dated 07/23/02;

118.  Michelle Sims (agent) Fax Cover Sheet to State Farm, dated 02/20/02;

119.  Master Record, dated 02/19/02;

120.  Underwriting Review, dated 02/19/02;

121.  Ho-Homeowners - Agent copy, dated 02/15/01;

122.  Great Lakes Analytical, Inc. invoice, dated 01/11/02;

123.  DTE Energy (electric) view financial transaction (01/01/01-02/15/02) (2 pgs);

124.  DTE Energy payment coupon (400 River Place Drive), dated 01/01/02;

125.  Water bill for 400 River Place, dated 03/11/02;

7

126.   MichCon view financial transaction (01/01/01-02/15/02) (2 pgs);

127.   State Farm Report Request (check no. 1-04 270122) for Treasurer City of Detroit, dated 01/17/02;

128.   2001 W-2 Wage and Tax Statement (Cajun J's Shrimp Shack);

129.   81 photographs taken by Herndon & Associates;

130.   1 photograph of Cajun J's;

131.   173 photographs of insured premises taken by State Farm;

132.   Lauren Bienenstock & Assoc, Inc. invoice, dated 07/29/02;

133.   ISO ClaimSearch Match Report, dated 01/03/02 (3 pgs);

134.   Frequency Tracking Search Response (4 pgs);

135.   Name Summary (search) (redacted) (2 pgs);

136.   Match Reports (search) (redacted) (17  pgs);

137.   Investigations Query (5 pgs);

138.   ChoicePoint Online (Collins Glenn) (redacted) (4 pgs);

139.   Fire Payments by COL/LN, dated 03/04/03; and

140.   Mapquest maps (12 pgs).


## Privileged

The following documents were prepared in anticipation of litigation and/or contain attorney's work product and/or are communications with our attorneys.  The documents are privileged from discovery and we object to producing them:

1.     Correspondence between State Farm Fire and Casualty Company and its attorneys, Patrick, Johnson & Mott, P.C.;

2.     Herndon & Associates investigative report, dated 01/15/02 (11 pgs);

8

3.      Great Lakes Analytical, Inc. laboratory report, dated 01/11/02;

4.      SIU Referral, dated 01/10/02 (2 pgs);

5.      Interoffice memorandum, dated 01/17/02;

6.      Interoffice memorandum, dated 01/24/02;

7.      Neighborhood Canvass, dated 01/30/02;

8.      Interoffice facsimile, dated 02/01/02;

9.      Preliminary Report, dated 02/01/02 (5 pgs);

10.     Interoffice memorandum, dated 02/01/02;

11.     Interoffice memorandum, dated 02/04/02;

12.     Interoffice facsimile, dated 02/12/02;

13.     Interoffice facsimile, dated 02/19/02;

14.     Progress Report, dated 02/19/02 (2 pgs);

15.     Interoffice memorandum, dated 03/19/02;

16.     Progress Report, dated 03/27/02 (2 pgs);

17.     Interoffice memorandum, dated 05/01/02;

18.     Combined Investigative Report, dated 05/01/02 (10 pgs);

19.     Interoffice memorandum, dated 05/24/02;

20.     Progress Report, dated 07/15/02 (2 pgs);

21.     Progress Report, dated 08/12/02 (2 pgs);

22.     Progress Report, dated 09/10/02 (2 pgs);

23.     Claim Committee Report (25 pgs);

24.     Fire Claim Service Record (01/10/02-forward); and

9

25.    Claim Activity Logs (01/10/02-10/31/02) (12 pgs).

The following documents contain personal and private information about individuals other than the Plaintiff. Producing these portions of the documents would violate these individuals' reasonable expectations of privacy:

1.    Name Summary (search) (redacted) (4 pgs);

2.    Match Reports (search) (redacted) (17 pgs);

3.    ChoicePoint Online (Collins Glenn) (redacted) (4 pgs);

## Prior Claim

1.    Fire Claim Service Record (DOL: 07/24/00) (7 pgs); and

2.    Loss Settlement.

10